UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>ALBERT RAGGE, JR.<br><br>Debtor | ) ) ) ) ) ) ) | Chapter 13<br>Case No. 15-14642-MSH |
| ALBERT RAGGE, JR.<br><br>Plaintiff<br><br>v.<br><br>WEBSTER BANK, NATIONAL ASSOCIATION; MARK ERIC ROBINSON AND DAVID HASAN FARRAG<br><br>Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding<br>No. 16-01108 |

**MEMORANDUM OF DECISION ON MOTION TO DISMISS
AND MOTION TO AMEND**

Before me are two motions: the motion of the defendant,[1] Webster Bank, National Association, to dismiss this adversary proceeding and the motion of the plaintiff, Albert Ragge, Jr., to amend the complaint.

---

[1] Messrs. Robinson and Farrag were dismissed as defendants by order of September 1, 2016.

1

**Facts**

The facts necessary to decide these motions are not in dispute. At all times relevant to this proceeding Mr. Ragge owned and continues to own the real estate at 2 Country Club Drive in Plymouth, Massachusetts. On September 29, 1999, Mr. Ragge executed a power of attorney naming his mother, June Ragge, as his attorney in fact "to say, do, act, transact, determine, accomplish, and finish all matters and things whatsoever" relating to Mr. Ragge's business, Magic Mountain Water Cooler Company, his real estate in Plymouth, his Lincoln Town Car and his safe.

On April 6, 2007, June Ragge borrowed $285,000 from Webster Bank and granted the bank a mortgage on Mr. Ragge's Plymouth property to secure the debt, presumably in her capacity as holder of his power of attorney. Webster Bank's attorney, Mark E. Robinson, conducted the loan closing. The Plymouth County registry of deeds refused to accept the April 6, 2007 mortgage instrument for recording. A few days later, on April 12, 2007, an entirely different mortgage on the Plymouth property securing Webster Bank's loan was recorded at the registry of deeds. That mortgage, which bore the signature of Albert Ragge, was unwitnessed but included the notary acknowledgment by another bank attorney, David H. Farrag, that the mortgage had been signed by Mr. Ragge, who personally appeared before him. In fact, on April 12, 2007, Mr. Ragge was not signing papers with Mr. Farrag; he was not even in the United States, having been involuntarily detained by the authorities somewhere in Central or South America. Meanwhile, Webster Bank, which was never informed that the April 6, 2007 mortgage

2

had not been recorded, disbursed its loan proceeds to its attorney, Mr. Robinson, who after paying off a pre-existing mortgage on the property, remitted the net proceeds to June Ragge.

On June 4, 2007, having succeeded in reentering the United States, Mr. Ragge made one mortgage payment to Webster Bank on the April 6th loan before learning of the circumstances of that loan, including the registry's rejection of the April 6, 2007 mortgage. He has made no payments to Webster Bank since. In February 2008, June Ragge died.

On March 5, 2009, Webster Bank commenced a civil action in the Plymouth County Superior Court Department of the Massachusetts Trial Court against Messrs. Ragge, Robinson and Farrag, seeking, as to Mr. Ragge, the reformation of the recorded April 12th mortgage, a declaration that the note and mortgage were valid and an award of a money judgment on the note.   At various times during the course of the litigation, Mr. Ragge was incarcerated. The precise dates of his incarceration are not in the record. Although it is not reflected in Mr. Ragge's complaint in this adversary proceeding, there is no dispute that he attended and participated in a hearing on April 21, 2009, in the state court action on Webster Bank's request for a *lis pendens* and a real estate attachment against the Plymouth property. *See Webster Bank, N.A. v. Ragge*, 85 Mass. App. Ct. 1113 (2014) (Table decision). Apart from that hearing, Mr. Ragge did not participate further in the state court action and consequently, on July 28, 2009, the state court allowed Webster Bank's motion for a default judgment against Mr. Ragge. The default judgment issued on October 27, 2009, and states in part "the Mortgage recorded at the Plymouth Registry of Deeds in Book 34381, Page 217 on April 12, 2007 is a valid encumbrance upon the land

3

known as 2 Country Club Drive, Plymouth, Massachusetts owned by defendant Albert J. Ragge, Jr."

Following entry of the default judgment, Mr. Ragge embarked on an unsuccessful five-year campaign through the superior court, the Massachusetts Appeals Court, the Massachusetts Supreme Judicial Court and the Supreme Court of the United States to have the default judgment vacated. His efforts included a May 17, 2010 motion for stay of execution filed in the superior court; an October 19, 2010 motion to vacate the judgment followed by another motion to vacate with a supporting affidavit filed on November 30, 2010; and a March 1, 2011 appeal from the superior court's February 22, 2011 order denying the motion to vacate the default followed shortly thereafter on March 10, 2011, by a motion in the superior court to amend the judgment. In the meantime, Webster Bank commenced an action in state court pursuant to the Servicemembers Civil Relief Act ("SCRA") as a necessary precursor to foreclosing its mortgage on the Plymouth property. Mr. Ragge filed a notice of appearance in the SCRA action, but apparently filed nothing further as a default judgment entered against him in that action on June 16, 2010. Mr. Ragge appealed that judgment as well. On April 10, 2014, in a single ruling, the Massachusetts Appeals Court affirmed both the superior court's order denying Mr. Ragge's motions to vacate the default judgment and the default judgment entered in the SCRA action. *Webster Bank, N.A. v. Ragge, supra*. On October 1, 2014, the Supreme Judicial Court denied further review. *Webster Bank, National Association v. Ragge*, 469 Mass. 1110 (2014). Undaunted, Mr. Ragge sought certiorari in the Supreme Court of the United States which denied his petition on October 5, 2015. *Ragge v. Webster Bank, N.A.*, 136 S. Ct. 104 (2015).

4

Having failed to achieve success on one field of battle, Mr. Ragge opened a second front. On November 30, 2015, he filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code commencing the main case in this court. On April 15, 2016, Webster Bank filed its proof of claim, which it subsequently amended on July 25, 2016, asserting a claim of $589,801.89 against Mr. Ragge.

On June 20, 2016, Mr. Ragge commenced this adversary proceeding against Webster Bank and Messrs. Robinson and Farrag. The complaint against Webster Bank asserts first, that the six year state statute of limitations bars collection of the bank's state court judgment, thereby necessitating the disallowance of the bank's proof of claim and second, that Webster Bank negligently failed to supervise its attorneys, Robinson and Farrag. Following my dismissal of the only count in the complaint asserting claims against the individual defendants, Mr. Ragge filed a motion to amend the complaint to substitute two "new" counts against Webster Bank, one entitled "Recoupment; Objection to Claim" (count I) and the other entitled "Negligence; Failure to Supervise; Recoupment" (count II). While the proposed amended complaint is not a model of clarity, it appears to eliminate the statute of limitations as a basis for disallowing Webster Bank's proof of claim, asserting instead that the bank's claim should be disallowed because June Ragge lacked authority to execute the note and mortgage on Mr. Ragge's behalf. Alternatively, Mr. Ragge seeks to reduce Webster Bank's claim by whatever recovery the bank ultimately receives from Messrs. Robinson and Farrag. As in his initial complaint, Mr. Ragge asserts Webster Bank's failure to supervise its attorneys, Robinson and Farrag, was a breach of a duty it owed to him and his mother, thus rendering Webster Bank liable for unspecified damages.

5

**Positions of the Parties**

Webster Bank asserts that Mr. Ragge's complaint, which essentially seeks to invalidate the bank's mortgage, is barred by application of the doctrines of claim preclusion, issue preclusion and *Rooker-Feldman*. Webster asserts that claim preclusion is applicable because (1) the parties in this adversary proceeding are the same as the parties in the superior court action; (2) the causes of action in both cases resolve the same dispute; and (3) there is a final judgment on the merits in the earlier action. The fact that the judgment against Mr. Ragge in the earlier action entered by default is no obstacle to invoking claim preclusion in Webster Bank's view because Mr. Ragge had a fair opportunity to litigate his claims and in fact did litigate them before and after the default judgment entered.

Webster Bank also maintains that issue preclusion bars Mr. Ragge's claims against it as his complaint and proposed amended complaint are based on a claim that the bank's mortgage is invalid, a fact in direct contravention to the rulings of the superior court and the appellate courts. Citing *Kobrin v. Bd. of Reg. in Medicine*, 444 Mass. 837 (2005), for the proposition that Massachusetts requires that to be subject to preclusion an issue must be "actually litigated and determined by a valid and final judgment, and [that] the determination [be] essential to the judgment," Webster Bank again relies on Mr. Ragge's post-judgment conduct to demonstrate that he actually litigated his claims in state court.

Finally, even if the claims against it are not barred by issue or claim preclusion, Webster Bank urges dismissal under the *Rooker-Feldman* doctrine. Webster argues that adjudicating the

claims against it in this adversary proceeding would require me to act as an appellate court reviewing the final judgment of the superior court.

In opposing Mr. Ragge's motion to amend the complaint, Webster Bank argues that the amended complaint could not survive a motion to dismiss for the same reasons the initial complaint warrants dismissal, and thus allowing any amendment would be futile.

Mr. Ragge alleges that the default judgment in the state court resulted from what he terms "a procedural error resulting from [his] incarceration." Because there was not a trial on the merits in the state court, he believes none of the preclusion grounds relied on by Webster Bank would be applicable. Addressing the *Rooker-Feldman* doctrine specifically, he argues without any analysis that, unlike the state court action, the claims in this adversary proceeding arise under the Bankruptcy Code, although his complaint and amended complaint lack any reference to any provision of the Bankruptcy Code. He submits that the claims asserted here "are independent of anything that could have been litigated in Superior Court," but then pleds that "he simply wants an opportunity to be heard on the merits and save his home from foreclosure of a mortgage he never granted and was infected with fraud and deceit on the part of Webster's closing attorneys, as Webster Bank alleged in the Superior Court complaint."

Mr. Ragge's original complaint alleged that Webster Bank was barred from collecting on its promissory note by the six-year statute of limitations imposed by Mass. Gen. Laws ch. 106, § 3-118. He had filed a motion for judgment on the pleadings based on this defense but voluntarily withdrew that motion. He did not repeat the argument in opposing Webster Bank's motion to

dismiss nor did he include it in his proposed amended complaint and thus appears to have waived it.[2]

**Discussion**

Webster Bank's motion to dismiss based on claim and issue preclusion and the *Rooker-Feldman* doctrine amounts to a challenge to this Court's subject matter jurisdiction to hear and determine this adversary proceeding and is governed by Fed. R. Civ. P. 12(b)(1), made applicable to this proceeding by Fed. R. Bankr. P. 7012. *See Field v. Berman*, 526 Fed. Appx. 287, 2013 WL 2382304, at *5 (4th Cir. June 3, 2013); *Coleman v. Pataki*, 170 Fed. Appx. 145, 2006 WL 519420 (2d Cir. March 2, 2006); *Philbrick v. Maine Department of Health and Human Serives*, 616 F. Supp.2d 123 (D. Me. 2009). *See also Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001) (noting various attacks to subject matter jurisdiction are appropriate under Rule 12(b)(1)). A motion to dismiss under Rule 12(b)(1) may either be what courts refer to as a "facial challenge" or a "factual challenge." *Id.* In a facial challenge (sometimes also referred to as a "sufficiency challenge") the facts alleged in the complaint are taken as true and all

---

[2] In any event Mass. Gen. Laws ch. 106, § 3-118 does not bar Webster Bank's action to collect on its note. That section provides in relevant part:

> (a) Except as provided in subsection (e), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

Webster Bank commenced its state court action within two years after the note was executed.

reasonable inferences are drawn in favor of the plaintiff. *Id.* If the alleged jurisdiction is based on facts disputed by the defendant, the allegations of the complaint are afforded no special deference. *Id.* The court, unfettered in its fact-finding, may draw upon documents outside of the pleadings and may even conduct an evidentiary hearing if appropriate. *Id*. In this case because the relevant facts are undisputed, Webster Bank's motion to dismiss on preclusion and *Rooker-Feldman* grounds will be treated as a facial challenge.

The *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine derives its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed.2d 206 (1983). "It prevents lower federal courts from acting as "superappeals" courts sitting in review of state court orders "after the state proceedings ended." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed.2d 454 (2005)". *Goldsmith v. Massad (In re Fiorillo)*, 494 B.R. 119, 140 (Bankr. D. Mass. 2013). If the doctrine applies to this adversary proceeding, then I have no jurisdiction to proceed further and dismissal is appropriate. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Federal courts enjoy only the jurisdiction conferred upon them by Article III of the United States Constitution and by federal statute. *Sheldon v. Sill*, 49 U.S. 441, 442 (1850). Only the Supreme Court of the United States has appellate jurisdiction to reverse or modify a state court judgment. 28 U.S.C. § 1257; *Exxon Mobil*, 544 U.S at 283. Thus lower federal courts,

9

including bankruptcy courts, may not act as appellate courts sitting in review of state court judgments. *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004).

Historically, the *Rooker-Feldman* doctrine proved difficult to apply, leading to inconsistent rulings by federal courts. In 2005 the Supreme Court attempted to clarify that the *Rooker-Feldman* doctrine was limited to situations similar to the two cases for which it was named. *Exxon Mobil Corp.,* 544 U.S. at 284.

In *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414-15 (1923), the parties who had lost their case in state court asked the federal district court to declare the state court judgment void because it gave effect to a state statute which the losing parties alleged was unconstitutional. The appellant, under the procedure then relevant, appealed the federal district court's decision directly to the Supreme Court. In affirming the district court's dismissal, a unanimous Supreme Court stated that the action, which essentially was a direct appeal to the federal district court of the state court judgment, "was so plainly not within the District Court's jurisdiction as defined by Congress that the motion to affirm [the dismissal] must be affirmed." *Id.* at 415.

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), two individuals who had graduated from non-accredited law schools sought waivers of a rule requiring applicants for admission to the bar in the District of Columbia to have graduated from an accredited law school in order to sit for the bar examination. The District of Columbia Court of Appeals, the District's equivalent of a state court (the "D.C. court"), denied the applicants' petitions to waive the requirement. The applicants filed separate actions in the United States District Court for the District of Columbia challenging on constitutional grounds the D.C. court's

refusal to grant them waivers and seeking orders requiring the defendant to allow them to sit for the bar examination. Each action was dismissed by the federal district court but each was reinstated by the United States Court of Appeals for the District of Columbia Circuit, which found that the decisions of the D.C. court were administrative rather than judicial. The Supreme Court disagreed, reversing the circuit court and holding that while the federal district court had subject matter jurisdiction over what the Supreme Court described as a "general" constitutional challenge to D.C.'s bar examination rule that would not require reversal of the D.C. court's decision, the district court lacked jurisdiction to review the appellants' other allegations which were "inextricably intertwined" with the D.C. court's decision to deny the appellants' requests and would require the lower federal court to review the judgment. *Id.* at 486.[3]

---

[3] In his dissent, Justice Stevens, while disputing that the DC court's decision was adjudicative, criticized the majority for failing to distinguish between an appellate review of a judgment arising from a judicial proceeding and a collateral attack on such a judgment.

> If a challenge to a state court's decision is brought in United States District Court and alleges violations of the United States Constitution, then by definition it does not seek appellate review. It is plainly within the federal-question jurisdiction of the federal court. There may be other reasons for denying relief to the plaintiff—such as failure to state a cause of action, claim or issue preclusion, or failure to prove a violation of constitutional rights. But it does violence to jurisdictional concepts for this Court to hold, as it does, that the federal district court has no *jurisdiction* to conduct independent review of a specific claim that a licensing body's action did not comply with federal constitutional standards. The fact that the licensing function in the legal profession is controlled by the judiciary is not a sufficient reason to immunize allegedly unconstitutional conduct from review in the federal courts.

460 U.S. at 490 (Stevens, J., dissenting) (internal citation and footnote omitted).

11

In *Exxon Mobile* the Supreme Court conceding that "the [*Rooker-Feldman*] doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases," emphasized that the doctrine applied only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 283.

This adversary proceeding presents a textbook example of a case barred by the *Rooker-Feldman* doctrine. This adversary proceeding was commenced by Mr. Ragge– the state court loser– after there was a final order that left standing the default judgments entered against him. Indeed, Mr. Ragge correctly sought to have the state court judgments reviewed by the Supreme Court, the only federal court with jurisdiction to hear the matter.

The injury of which Mr. Ragge complains is that he was denied his day in court to respond to Webster Bank's allegations. But that is the precise injury flowing from the state court judgment. I could not grant Mr. Ragge the relief he seeks in this adversary proceeding without reversing the state court judgment and that I am not empowered to do.

That Mr. Ragge couched count I of his complaint as an objection to Webster Bank's proof of claim does not alter the result here. Webster Bank's proof of claim is based on and incorporates its state court judgment. Although Mr. Ragge's assertion that he is entitled to a reduction of Webster Bank's claim against him by whatever amounts the bank recovers from Messrs. Robinson and Farrag may survive a *Rooker-Feldman* challenge, he has not alleged that any such recovery has occurred and thus his claim is not ripe for adjudication. For these reasons

this adversary proceeding must be dismissed in its entirety. *In re Philadelphia Entm't & Dev. Partners, L.P.*, 549 B.R. 103, 138 (Bankr. E.D. Pa. 2016) ("This Court acknowledges that it is well settled that the *Rooker–Feldman* Doctrine bars bankruptcy courts from considering non-bankruptcy claims that seek to invalidate a mortgage that is subject to a prepetition state court default judgment.").

### The Motion to Amend

> The established rule is that a plaintiff, suing in a federal court, must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.

*Smith v. McCullough*, 270 U.S. 456, 459 (1926) (internal citation omitted).

Having determined an absence of jurisdiction over this adversary proceeding, I need not dwell on Mr. Ragge's motion to amend the complaint. It is sufficient to say that the proposed amendment would not rescue this proceeding from dismissal under the *Rooker-Feldman* doctrine any more than the initial complaint has.

Conclusion

For the foregoing reasons, Webster Bank's motion to dismiss is granted. Mr. Ragge's motion to amend the complaint is denied. Separate orders shall issue.

At Boston, Massachusetts this 8th day of February, 2017.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   David G. Baker, Esq.
Boston, MA
for Albert Ragge, Jr.

Brian J. Hughes, Esq.
Brennan, Recupero, Cascione, Scungio & Mcallister, LLP
Taunton, MA
for Webster Bank National Association